UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
QWIK-COOK, INC.,

                         Plaintiff,         09-CV-6278

       v.
                                                     **DECISION**
BIRDDOG SOLUTIONS, INC.,         **and ORDER**

                         Defendant.
_____

## **INTRODUCTION**

Plaintiff Qwik-Cook, Inc., ("Plaintiff" and/or "Qwik-Cook") brings this action pursuant to diversity jurisdiction alleging that the defendant Birddog Solutions, Inc., ("Defendant" and/or "Birddog") breached a contract entered into by the parties. Specifically, in its first cause of action plaintiff seeks damages for defendant's alleged breach of an agreement due to its failure to timely process plaintiff's freight bills. Plaintiff in its second cause of action further alleges rescission of the contract based on Birddog's alleged failure to audit Qwik-Cook's freight bills. Moreover, in its third cause of action Qwik-Cook seeks cancellation of the contract based on Birddog's alleged nonperformance.

Birddog has filed a motion to dismiss the first cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that Qwik-Cook has failed to state a cause of action upon which relief can be granted against Birddog. Defendant contends that Qwik-Cook's first cause of action based on the contract with

Birddog contained a valid and enforceable clause limiting and precluding liability as it pertains to the allegations set forth in the first cause of action. Qwik-Cook opposes the motion to dismiss. For the reasons set forth below, I grant defendant's motion to dismiss the First Cause of Action.

## BACKGROUND

Qwik-Cook operates a mail order catalogue business. See Complaint ("Comp."), ¶2. According to the Complaint, its livelihood depends on the timely shipment of parcel packages, both inbound and outbound by common carriers. See id. In May 2008, Qwik-Cook and Birddog entered into a Logistics Optimization Services Agreement ("LOSA Contract") under which Qwik-Cook agreed to utilize and Birddog agreed to provide logistical and audit services for a three-year period to reduce plaintiff's freight and shipping expenses. See id., ¶4. The Complaint further alleges that Birddog agreed to provide audit and payment services for Qwik-Cook, including the auditing of freight invoices "for extension, addition, rate and parcel service failure errors, and processing the correct payment amounts in a timely manner, and in accordance with the payment terms" of Qwik-Cook's freight carriers. See id., ¶5.

In addition, plaintiff claims that defendant did not (1) properly audit the freight invoices from plaintiff's carriers, (2) correct any errors in the invoices from plaintiff's carriers, (3)

timely process the payment of plaintiff's freight invoices, and (4) failed to supply documentation to plaintiff on parcel services. See id., ¶8. The Complaint asserts that as a result of the failure to process plaintiff's freight invoices on a timely basis, plaintiff's freight carriers notified plaintiff that it was in breach of their contract and as a consequence stopped providing freight service to plaintiff. See id., ¶9. Accordingly, plaintiff alleges that the lack of freight services "crippled plaintiff's mail order catalogue business." See id., ¶10.

The two-page LOSA Contract contains the following clause:

> 6.   Limit of Liability. Notwithstanding anything else in this agreement or otherwise, BirdDog will not be liable with respect to any subject matter of this agreement under any contract, negligence, strict liability or other legal or equitable theory (I) for any amount or (II) for any punitive, special, incidental or consequential damages or lost data or (III) for cost of procurement of substitute goods, technology or services or (IV) for loss or corruption of data or interruption of use. This section does not limit liability for bodily injury of a person. BirdDog makes no warranty with respect to any technology, goods, services, rights or other subject matter of this agreement and hereby disclaims warranties of merchantability, fitness, for a particular purpose an noninfringement with respect to any and all of the foregoing.

See LOSA Contract, attached as Ex. A to defendant's Br. Qwik-Cook claims that Birddog breached the LOSA Contract when it allegedly failed to timely process Qwik-Cook's freight bills causing damages to the plaintiff. See id., ¶15. As a result of the alleged breach, plaintiff seeks $171,225 in "operational costs for the additional

shipping and handling services needed to service Plaintiff's customers" and $500,000 for "damage to its [plaintiff's] professional reputation and loss of goodwill." See id., ¶¶11 and 16.

In support of its motion to dismiss the First Cause of Action, Birddog argues that the LOSA Contract contains a limit of liability clause in paragraph 6 that precludes recovery of any consequential, special, incidental, punitive, or indirect damages. See Def. Br. at 2. Specifically, Birddog contends that the claim for $171,225 for alleged "cost overruns" is barred by ¶6 since this is a claim for special, incidental, or consequential damages, and for cost of procurement of substitute goods or services. See id. Similarly, defendant states that the claim for $500,000 for "damage to [plaintiff's] professional reputation and loss of goodwill" is also prohibited by ¶6 of the LOSA Contract. See id. Accordingly, defendant argues that plaintiff's allegations in the First Cause of Action are precluded by ¶6, limit of liability clause, of the LOSA Contract.

Qwik-Cook's response to these arguments are (1) that the language of the limit of liability clause is ambiguous and determining its meaning is a question of fact for the fact-finder, (2) that Birddog's interpretation of the limit of liability clause is improper because it would lead to an absurd result and would contravene the manifest intention of the parties and the purpose of the LOSA Contract itself, and (3) that even if Birddog's

interpretation of the limit of liability clause was proper, the clause is unenforceable because it would render the contract lacking in mutuality of obligation. See Pl. Opp. Br. at 2-3.

**DISCUSSION**

### I. Standard of Review on a Motion To Dismiss

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must "accept...all factual allegations in the complaint and draw...all reasonable inferences in the plaintiff's favor." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (disavowing the oft-quoted statement from Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. at 1965 (internal quotation marks omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to]

provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" See Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008) (quoting Twombly, 127 S.Ct. at 1974).[1]

## II. The LOSA Contract Is Not Ambiguous As It Relates To The First Cause Of Action

Plaintiff argues that the limit of liability clause is ambiguous and unclear leaving it susceptible to at least two reasonable but conflicting interpretations. See Pl. Br. at 3; see also Jensen v. Bd. of Regents, 268 Neb. 512, 518 (2004). As such, plaintiff claims that under Nebraska law,[2] the meaning and relevance of ¶6 of the LOSA Contract presents a question of fact that needs to be determined by a fact-finder and is not appropriate for a motion to dismiss. See id., at 4; see also Kropp v. Grand Island Public Sch. Dist. No.2, 246 Neb. 138, 142 (1994) (meaning of ambiguous terms in contract is a question of fact to be determined by a fact-finder). Defendant contends that with respect to interpretation of the LOSA Contract, plaintiff's claim is misplaced

---

[1] The Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002); see also Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991). Here, the Complaint expressly references the LOSA Contract, which is attached to Birddog's memorandum in support of its motion to dismiss. In fact, the First Cause of Action for breach of contract expressly relies on the LOSA Contract. The Court finds that the Complaint does incorporate this document since it relates to the very issue referred to and characterized in various paragraphs of the Complaint. See Complaint, ¶¶ 4-9, 15. Thus, the LOSA Contract is a document Qwik-Cook "either possessed or knew about and...relied [on] in bringing the suit." See Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir.2000) (citations omitted).

[2] The parties agree that Nebraska law applies.

since the contract is clear on its face and does not require construction. See Def. Reply Br. at 1-2; see also Bass v. Dalton, 213 Neb. 360, 363 (1983) ("courts are not free to interpret contracts which are couched in clear and unambiguous language").

The Court agrees with defendant's argument and finds that the language in ¶6 of the LOSA Contract pertaining to limits of liability is unambiguous as it relates to the allegations in the First Cause of Action in the Complaint. See Bedrosky v. Hiner, 230 Neb. 200, 204 (1988) (Court held that "[a] determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus the fact that the parties urge opposing interpretations does not necessarily indicate that the contract is ambiguous.") ¶6 of the LOSA Contract states that defendant will not be liable "(II) for any punitive, special, incidental or consequential damages[.]" See LOSA Contract, ¶6. The largest item of damages sought by Qwik-Cook is the "damage to its professional reputation and loss of goodwill" alleged to be $500,000. See Comp., ¶16. However, such damages as alleged in ¶16 of plaintiff's Complaint are clearly excluded by ¶6 of the LOSA Contract, which specifically excludes liability for special, incidental or consequential damages. See J.J. Schaefer Livestock Hauling v. Gretna St. Bank, 229 Neb. 580, 428 N.W.2d 185 (1988) (There is a strong presumption that a written

instrument correctly expresses the intention of the parties). Thus, plaintiff's allegations alleging injury to its business reputation and loss of goodwill is dismissed.

The second item of damages that Qwik-Cook seeks to recover is "$171,225 in operational costs for the additional shipping and handling services needed to service Plaintiff's customers." See Comp., ¶11. This alleged loss can clearly be categorized as an item of consequential damages. See, e.g., Shotkoski v. Standard Chemical Mfg. Co., 237 N.W.2d 92, 97 (Neb.1975) (consequential damages included loss in milk production caused by dairy farmer's use of cattle feed supplement). The damages alleged in ¶11 of the Complaint are also precluded as "cost of procurement of substitute ...services" under ¶6 of the LOSA Contract. See Rumbaugh v. Rumbaugh, 229 Neb. 652, 428 N.W.2d 500 (1988) (parties are bound by the terms of the contract even though their intent may be different from that expressed in the agreement).[3] Because the terms of ¶6 of the LOSA Contract are clear, there are no factual ambiguities that require interpretation. See Tighe v. Combined Ins. Co. of America, 261 Neb. 993, 628 N.W.2d 670 (2001) (Whether or not contract language is ambiguous is a question of law). Accordingly, the

---

[3]It is true that, ordinarily, a breach of contract will mean that damages, if proved, may be recovered against the breaching party. Here, however, in ¶6, Qwik-Cook and Birddog agreed to a limitation of damages. Parties bargaining at arm's length surely may limit the recovery of actual damages resulting from a breach that is caused by specified circumstances. See Reichert v. Hammond, 264 Neb. 16, 645 N.W.2d 519, 527 (Neb.2002) ("When... parties are experienced in business...and the parties had fair opportunity to consider the agreement, courts rarely find that liability limitations are unconscionable.") The fact that Birddog may have breached the contract cannot void the limit of liability clause.

language of the limit of liability clause is not ambiguous as it relates to the damages alleged in the First Cause of Action. Plaintiff's allegation relating to operational costs is dismissed.

### III. **Mutuality of Obligation**

Plaintiff argues that the limit of liability clause is unenforceable since it would result in the contract lacking mutuality of obligation. See Pl. Br. at 7. In addition, plaintiff claims that as interpreted by defendant, plaintiff would be obligated to perform its duties but Birddog could not be held accountable for the breach of its duties. See id. Defendant contends that it is not suggesting that the limit of liability clause exculpates it from all liability. See Def. Reply Br. at 3. For instance, the limit of liability clause does not preclude recovery for compensatory or direct damages for economic loss sustained as a result of a breach of the contract. See id.

Mutuality of obligation is an essential element of every enforceable agreement under Nebraska law. See Hecker v. Ravenna Bank, 237 Neb. 810, 468 N.W.2d 88, 93 (Neb.1991) (citing Garsick v. Dehner, 145 Neb. 73, 15 N.W.2d 235, 238 (Neb.1944). The Supreme Court of Nebraska has held that "mutuality of contract consists in the obligation of each party to do, or to permit something to be done, in consideration for the act or promise of the other...Mutuality is absent when one party only of the contracting parties is bound to perform and the right of the parties exist at

the option of one only." See id. Here, Qwik-Cook's assertion that ¶6 of the LOSA Contract limits all liability if Birddog breached the contract is misplaced. The limit of liability clause does not exonerate defendant from potential liability for all damages. As previously mentioned, ¶6 does not bar recovery for compensatory or direct damages for economic loss sustained as a result of a breach of the agreement. It limits damages for "punitive, special, incidental or consequential damages" as well as "cost of procurement of substitute...services[.]" See LOSA Contract, ¶6.

## **CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss the First Cause of Action of the Complaint for breach of contract is GRANTED since it fails to state a claim upon which relief can be granted. The First Cause of Action of the Complaint is dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          s/Michael A. Telesca
                                          MICHAEL A. TELESCA
                                   United States District Judge

Dated: Rochester, New York
       October 9, 2009